UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>REAL PROPERTY LOCATED AT 475 MARTIN LANE, et al.,<br><br>　　　　　Defendants. | CV 04-2788 ABC (PLAx)<br>CV 04-3386 ABC (PLAx)<br>CV 05-3910 ABC (PLAx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW<br><br>Trial Date: April 30, 2013 |

Commencing on April 30, 2013, the claims of Claimant Optional Capital Inc. ("Optional"), and the Kim Claimants to properties in each of the above consolidated actions were tried by the Honorable Audrey B. Collins, United States District Court Judge, without a jury. On May 1, 2013, the claimants informed the Court that they achieved a settlement. The claimants orally withdrew certain of their claims, and these withdrawals were later confirmed by Notices.[1]

---

[1] On May 2 and 3, 2013, Notices confirming the following oral representations were filed: that all Kim Claimants except Se Young Kim and Young Ai Kim withdrew all of their claims (docket no. 1158), and that Optional withdrew its claims to the properties claimed by Se Young Kim and Young Ai Kim (docket no. 1161). The Kim Claimants' counsel withdrew certain of his attorneys' fee liens (docket no. 1157).

As a result of these withdrawals, the only remaining claims were (1) Optional's claims to all of the properties except the properties claimed by Se Young Kim and Young Ai Kim, and (2) Se Young Kim and Young Ai Kim's claims.  Because all other claims were withdrawn, these remaining claims stood unchallenged.  The settlement was put on the record under seal.

Although none of the remaining claims were contested, Optional wished to present to the Court further evidence tracing the funds the Kim Claimants converted from Optional to the properties to which Optional had outstanding claims.  The Kim Claimants did not object to Optional's request and, having no further claims to litigate, the Kim Claimants left the proceedings.  The Court granted Optional's request and heard its additional, unchallenged evidence.

Based on the evidence presented to the Court at trial, pursuant to Local Rule 52-1, the Court makes the following findings of fact and conclusions of law in this matter.

**FINDINGS OF FACT**

From July 30, 2001 through November 5, 2001, Christopher Kim, Erica Kim, and Bora Lee ("the Kims") converted funds from Optional.

The approximate amount that the Kims converted from Optional was 37.1 billion Korean won.

Christopher Kim was the head of Optional, was on Optional's board of directors, and ran Optional's day-to-day activities during the period the Kims converted funds from Optional.

Claimant Erica Kim was a director of Optional and Claimant Bora Lee was a manager during this same period.

The Kims also owned the majority of Optional's stock by causing

entities controlled by them to purchase Optional stock on the open market; by causing three of their wholly-owned corporations to purchase Optional stock from Kwangju Bank; and by using sham corporations to purchase additional stock they caused Optional to issue through a series of paid-in capital increases.

As a result of these stock purchases, the Kims gained control of Optional by early-to-mid 2001.

In light of the foregoing, and based on their own admissions, Christopher Kim and Erica Kim were fiduciaries of Optional during the entire period the Kims converted funds from Optional.

The Kims worked together to convert Optional's funds.

The Kims' purchases of Optional's stock were part of the same scheme by which the Kims converted Optional's funds.  This scheme was complex, involving numerous international financial transactions among numerous shell entities.  The complexity of the scheme appears to have been aimed at thwarting detection or tracing.

Optional contends that the Kims used the proceeds of their conversion to obtain the properties that are the subject of this action.

Optional has asked the Court to impose a constructive trust in its favor over these properties as a remedy for the Kims' conversion.

Because the Kims were fiduciaries of Optional, Optional's burden to trace the funds the Kims converted from Optional to the subject properties is minimal.

Having heard the evidence presented at trial, the Court finds that Optional Capital, Inc., has sufficiently traced the proceeds and product of the 37.1 billion Korean won converted from it during the period of July 30, 2001 through November 5, 2001, to each of the

following properties:

(1) The real property located at 475 Martin Lane, Beverly Hills, CA; now a substituted res of $2,957,240.40 (plus interest), representing the proceeds from the sale of the property.;

(2) The real property located at 924 N. Beverly Drive, Beverly Hills, CA;

(3) $956,525.05 ("plus interest") seized from United Commercial Bank Account no. 63600084 in the name of First Stephora Avenue, Inc.;

(4) $157,329.05 (plus interest) seized from United Commercial Bank Account no. 6359914 in the name of Alexandria Investment, LLC;

(5) All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name of Alexandria Investment, LLC when the government served its arrest warrant on or about August 8, 2005;

(6) A 2002 Porsche Boxster, vin WPOCA29852U624063, California license number 4YBK677, registered in the name of Erica Kim;

(7) A 1999 Ferrari 550 Maranello, vin ZFFZR49A4X0114823, California license number 4YBK677, registered in the name of Erica Kim;

(8) $34,000.00, ("plus interest") as a substitute *res* for the seized 2003 Landrover Range Rover;

(9) A 2002 Toyota Tacoma Pickup Truck, vin 5TEVL52N82Z050246, California license no. 6W11800, registered in the name of Erica Kim;

(10) A 1999 Porsche Carerra, vin WPOAA2993XS622539, registered in the name of Erica Kim;

4

1　　　　(11) The items of Miscellaneous Furniture/Household items Beverly
2　　　　　　　　Drive, 3410-05-F-107 listed as part of exhibit A to the
3　　　　　　　　Government's forfeiture complaint in CV-05-03910;
4　　　　(12) The items of Miscellaneous Furniture/Household items Martin
5　　　　　　　　Lane, 3410-05-F-104 listed as part of exhibit A to the
6　　　　　　　　Government's forfeiture complaint in CV-05-03910;
7　　　　(13) The two chandeliers removed from the 475 Martin Lane
8　　　　　　　　property.

## CONCLUSIONS OF LAW

Tracing is the identification of the wrongfully acquired property into the hands of the defendant. <u>Mitchell v. Dunn</u>, 211 Cal. 129, 136 (1930).

To demonstrate that it is entitled to a constructive trust over the properties as a remedy for the Kims' conversion of its assets, Optional must trace the funds the Kims converted from it to the properties. <u>Ljepava v. M.L.S.C. Properties, Inc.</u>, 632 F.2d 815, 816 (9th Cir. 1980).

Because the Kims were fiduciaries of Optional during the period in which they converted funds from Optional, Optional's tracing burden is minimal. <u>Tretheway v. Tretheway</u>, 16 Cal.2d 133, 140 (1940) (proof of fiduciary relationship, betrayal of the trust, probable amount of the embezzlements presents a prima facie case); <u>Mitchell</u>, <u>supra</u>, 211 Cal. at 136 ("the degree of identification in an action between the cestui and the trustee is far less than in a case where the trustee is insolvent and the rights of creditors are involved. . . . [I]n a contest between the cestui and the administrator of a deceased defaulting trustee, where the trustee had commingled trust and personal funds,

5

the cestui had a special lien on the entire estate of the deceased solvent trustee, even though the trust funds could not be traced into any definite property. The court very carefully distinguished the cases involving the rights of creditors, and held that a different rule applied in such cases.") (internal citation omitted).

Thus, Optional's tracing burden is to establish: (1) the fiduciary relationship between it and Christopher Kim or Erica Kim; (2) the betrayal of trust; and (3) the probable amount of embezzlements. Tretheway, supra, 16 Cal.2d at 140 (upon showing son had access to certain of mother's funds, they passed through his hands, that no accurate or complete accounts were kept, burden upon son).

Optional has satisfied this burden by showing (1) that Christopher Kim and Erica Kim were its fiduciaries, (2) that Christopher Kim and Erica Kim betrayed Optional's trust by converting funds from Optional (as determined by the jury in *Optional Capital, Inc. v. Kyung Joon Kim, et al.*, CV 04-3866 ABC (PLAx)), and (3) the amount Christopher Kim and Erica Kim converted (37.1 billion Korean won, as found by the jury in CV 04-3866 ABC (PLAx)).

Because the Kims were fiduciaries of Optional, a constructive trust extended to the money the Kims actually stole from Optional, and to all property interests the Kims then held. Mitchell, supra, 211 Cal. at 136-137 ("The law will not permit a trustee to say that the only permanent investment made with moneys from the fund was with personal funds, and that the dissipated funds belonged to the cestui."); see also Keeney v. Bank of Italy, 33 Cal.App. 515, 517 (1917) ("where a trustee has mingled trust funds with his individual moneys, drawing upon the aggregate from time to time, it will be

1  conclusively presumed both against him and his creditors and persons
2  claiming under him, that the residue thereof is attributable to the
3  trust so far as may be necessary to keep the trust moneys intact"); In
4  Re Goldberg, 168 B.R. 382, 385-86 (B.A.P. 9th Cir. 1994) (affirming
5  bankruptcy court's determination that it cannot "accept Mr. Goldberg's
6  claim that his residence was bought with personal funds while his
7  personal expenses were paid with funds subject to [the] Bank's
8  constructive trust," and thus affirming imposition of constructive
9  trust over Goldberg's residence.).

      In addition, a constructive trust is a form of remedy that is "flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it." F.T.C. v. Network Services Depot, Inc., 617 F.3d 1127, 1143 (9th Cir. 2010) (remedy of constructive trust was appropriate despite the fact that the res of that trust encompassed funds that had been commingled among several participants in the same unlawful enterprise).  Thus, for example, where businesses or persons are part of a common enterprise and are co-participants in unlawful practices, "the common revenue generated in the course of that scheme [is] the proper subject of the court's equitable powers" and it is appropriate to impose a constructive trust on all of that common revenue.  Id.

      Because the Kims were working in concert to convert funds from Optional, and because the conversion scheme involved the Kims' purchases of Optional's stock, the Court finds that it is appropriate to extend a constructive trust in Optional's favor to all of the revenue generated from the Kims' scheme as a whole, and to all of the assets purchased with those revenues.

      Thus, to the extent the Kims arguably obtained any portion of the

above properties with monies derived from proceeds of their sale of stock purchased from Optional and not from funds converted from Optional, it is still appropriate to extend a constructive trust over those properties because all of the Kims' revenue-generating conduct at Optional was part of the same complex scheme to convert Optional's funds.

Based on the foregoing, the Court holds that a constructive trust in Optional's favor extends to all of the above-listed properties.

In addition, upon the Kim Claimants' withdrawal of their claims to the same properties, the Kim Claimants declined to further litigate Optional's factual allegations, and those allegations are therefore deemed admitted. Thus, Optional has also established tracing by default.

Similarly, Optional's claims to the properties are uncontested, and therefore, as the only claimant to the above-referenced properties, Optional is entitled to them by default.

**IT IS SO ORDERED.**

**DATED:     May 17, 2013**

_____
**AUDREY B. COLLINS
UNITED STATES DISTRICT JUDGE**